[994 NE2d 831, 971 NYS2d 740]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LESTER Q. JONES, Appellant.

Argued May 28, 2013; decided June 25, 2013

450

**POINTS OF COUNSEL**

*Dechert LLP*, New York City (*Matthew L. Mazur* and *Jonathan R. Streeter* of counsel), and *Richard M. Greenberg, Office of the*

*Appellate Defender*, for appellant. I. The lineup identification should have been suppressed as the fruit of a pretextual and flagrantly unconstitutional arrest. (*United States v Crews*, 445 US 463; *People v Dodt*, 61 NY2d 408; *Wong Sun v United States*, 371 US 471; *People v Bradford*, 15 NY3d 329; *People v Conyers*, 68 NY2d 982; *Brown v Illinois*, 422 US 590; *People v Johnson*, 66 NY2d 398; *People v Watson*, 200 AD2d 643; *People v De Bour*, 40 NY2d 210; *Johnson v Louisiana*, 406 US 356.) II. Evidence of witness intimidation by third parties should have been excluded in the absence of evidence that Lester Q. Jones authorized or directed the alleged threats. (*People v Buzzi*, 238 NY 390; *People v Bennett*, 79 NY2d 464; *People v Plummer*, 36 NY2d 161; *People v Shilitano*, 218 NY 161; *People v Davis*, 43 NY2d 17; *People v Sanchez*, 61 NY2d 1022; *People v Pignataro*, 263 NY 229; *People v Myrick*, 31 AD3d 668; *People v Spruill*, 299 AD2d 374; *People v Moses*, 35 AD3d 766.) III. The prosecutor's improper arguments during summation denied Mr. Jones a fair trial. (*People v Fisher*, 18 NY3d 964; *People v Calabria*, 94 NY2d 519; *Berger v United States*, 295 US 78; *People v Ashwal*, 39 NY2d 105; *People v Smith*, 288 AD2d 496; *People v Bailey*, 58 NY2d 272; *People v Collins*, 12 AD3d 33; *People v World*, 157 AD2d 567; *People v Mirenda*, 23 NY2d 439; *United States v Wade*, 388 US 218.) IV. The summary denial of Mr. Jones's motion to set aside the verdict violated the criminal procedure law and due process. (*People v Salemi*, 309 NY 208; *People v Savinon*, 100 NY2d 192.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Grace Vee* and *Susan Gliner* of counsel), for respondent. I. As defendant concedes, the decision reached by the lower courts, which employed the doctrine of attenuation to deny defendant's motion to suppress the victim's lineup identification on Fourth Amendment grounds, presents this Court with a mixed question of law and fact. Since there is support in the record for the Appellate Division's ruling that the identification testimony was properly admitted at trial, defendant's appeal to this Court should be rejected out of hand. (*People v Harrison*, 57 NY2d 470; *People v McRay*, 51 NY2d 594; *People v Francois*, 14 NY3d 732; *People v Williams*, 17 NY3d 834; *People v McIntosh*, 96 NY2d 521; *People v Greenidge*, 91 NY2d 967; *People v Campbell*, 87 NY2d 855; *People v Bianchi*, 85 NY2d 1022; *People v Bradford*, 15 NY3d 329; *People v Divine*, 6 NY3d 790.) II. Justice Farber properly exercised his discretion when he admitted evidence of implied threats made to a witness for the People by

third parties, after finding that there was sufficient circumstantial evidence to connect the threats to defendant and to warrant an inference as to his consciousness of guilt. (*People v Moses*, 35 AD3d 766; *People v Myrick*, 31 AD3d 668; *People v Spruill*, 299 AD2d 374; *People v Bennett*, 79 NY2d 464; *People v Plummer*, 36 NY2d 161; *People v Holland*, 174 AD2d 508; *People v Cintron*, 95 NY2d 329; *People v Singleton*, 121 AD2d 752; *People v Gonzalez*, 253 AD2d 674; *People v Shilitano*, 218 NY 161.) III. Defendant's challenges to the prosecutor's summation are unpreserved and without merit. (*People v Romero*, 7 NY3d 911; *People v Tardbania*, 72 NY2d 852; *People v Tonge*, 93 NY2d 838; *People v Dien*, 77 NY2d 885; *People v Balls*, 69 NY2d 641; *People v Medina*, 53 NY2d 951; *People v Galloway*, 54 NY2d 396; *People v Nai Hing Liang*, 208 AD2d 401; *People v D'Alessandro*, 184 AD2d 114; *People v Halm*, 81 NY2d 819.) IV. The trial court properly denied defendant's motion to set aside the verdict on the ground of newly discovered evidence. This court has no power to review the discretionary denial of that motion. (*People v Crimmins*, 38 NY2d 407; *People v Schulz*, 4 NY3d 521, 528 F Supp 2d 77; *People v Salemi*, 309 NY 208; *People v Wainwright*, 285 AD2d 358; *People v Davis*, 43 NY2d 17; *People v Johnson*, 208 AD2d 562; *People v Copeland*, 185 AD2d 280.)

## OPINION OF THE COURT

PIGOTT, J.

The principal issue on this appeal is whether the connection between defendant's illegal arrest and his subsequent lineup identification was sufficiently attenuated as to dissipate the taint of the wrongful arrest. The Appellate Division determined that it was and, because there is record support for that conclusion, we affirm.

In the early hours of May 16, 2006, a New York City detective responded to a distress call at an apartment building in Manhattan and spoke with the victim and her neighbor about an incident that occurred that morning. According to the victim, a man, whom she later identified as defendant, followed her onto the elevator and demanded money. A struggle ensued. When they reached the fifth floor, the elevator opened and they fell into the hallway. The man rifled through the victim's wallet and took her cash and credit cards. The victim described the man as six feet tall, in his early to mid-thirties with dark skin and a large build. The neighbor who had witnessed the incident gave the detective a similar description, adding that the perpetrator had a large nose and went by the street name "Izz."

The detective contacted a colleague from the Manhattan Gang Unit, who ran the nickname through a database. The detective learned that "Izz" was also known as "Michael Wright." With that information, the detective obtained a rap sheet and photograph of Michael Wright, both of which he placed in his case folder. The rap sheet indicated that Michael Wright also went by defendant's given name, Lester Jones. The physical attributes listed on the rap sheet matched those relayed to the detective by the victim and her neighbor.

Several days later, a sergeant was reviewing the robbery report when he recognized the name of a worker at the store that the victim had visited before she was attacked. The employee had told the detective that he saw the man leaving the apartment building 5 to 10 minutes after the incident. The sergeant contacted the store employee, who told him that he knew the man who had committed the crime. The sergeant gave the employee his cell phone number and asked the employee to call him the next time he saw the man.

On May 31, 2006, at approximately 2:00 a.m., while the sergeant was on duty, the store employee called and told him that the man was at the store. When the sergeant arrived with two other officers, the employee told him that the man, who was wearing white pants, had just left. The sergeant located the man—defendant—around a nearby corner, and when asked, the defendant identified himself as "Michael Wright" but was unable to produce identification.

Here, the story takes an unfortunate turn. The sergeant concluded that the defendant was blocking the sidewalk and, because he had no identification, handcuffed the defendant and escorted him to an unmarked police car, with the intention of charging him with disorderly conduct. In later testimony, it was the sergeant's view that the defendant was not free to go because he had been identified as a person involved in the robbery. As the sergeant and defendant were walking to the police car, the sergeant contacted the store employee, who told the sergeant that he had arrested the right man.

Defendant was transported to the precinct six blocks away. Within 15 minutes of his arrival, the sergeant contacted the detective at his home (at approximately 2:30 a.m.) and learned that the detective had placed a photograph of the suspect in his case folder. The sergeant retrieved the folder from the detective's desk and found a picture of the defendant. Five hours later,

when the detective arrived at the precinct, he made arrangements for defendant to be placed in a lineup. The victim identified defendant as the perpetrator. Defendant was arrested for and charged with burglary in the first degree (Penal Law § 140.30 [2]) and robbery in the second degree (Penal Law § 160.10 [2] [a]).

Following his conviction, defendant appealed. The Appellate Division held the judgment in abeyance and remitted the matter for a *Dunaway* hearing (*Dunaway v New York*, 442 US 200 [1979]), finding that defendant had made sufficient allegations concerning the propriety of his arrest to warrant such a hearing (73 AD3d 662, 663 [1st Dept 2010]). At the hearing, the detective and sergeant, the only two witnesses called, testified essentially to the facts set forth above. The hearing court credited their testimony and concluded that the sergeant lacked probable cause to stop and arrest defendant on May 31, 2006 for the earlier robbery. The court did, however, find that because the detective had independently gathered sufficient evidence tying defendant to the robbery, the sergeant's discovery of the "fruits" of the detective's investigation within 30 minutes of defendant's detention broke the causal connection between the illegal arrest and the lineup identification. The hearing court concluded that the call between the sergeant and the detective constituted an "intervening event" that attenuated the causal connection between the arrest and the lineup identification.

The Appellate Division affirmed, holding, among other things, that although the police lacked probable cause for the arrest, the lineup identification "was based on intervening probable cause," which sufficiently attenuated the taint of the illegal arrest (85 AD3d 612, 612 [1st Dept 2011]). A Judge of this Court granted defendant leave to appeal (19 NY3d 962 [2012]).

The sergeant's initial arrest of defendant was without probable cause and therefore illegal. But evidence discovered subsequent to an illegal arrest is not indiscriminately subject to the exclusionary rule (*see People v Jones*, 2 NY3d 235, 241-242 [2004]). Instead, the People "must have 'somehow exploited or benefited from [the] illegal conduct' such that 'there is a connection between the violation of a constitutional right and the derivative evidence' obtained by the police" (*id.* at 242, quoting *People v Burr*, 70 NY2d 354, 362 [1987], *cert denied* 485 US 989 [1988]).

Defendant claims that the lineup identification must be suppressed because it was the product of an illegal arrest. In order

to counter that challenge, the People were required to demonstrate that the identification was "acquired by means sufficiently distinguishable from the arrest to be purged of the illegality" (*People v Conyers*, 68 NY2d 982, 983 [1986]), i.e., that the taint of the illegal arrest was "attenuated" (*see Wong Sun v United States*, 371 US 471, 491 [1963]). In order to determine whether attenuation exists, the court must "consider 'the temporal proximity of the arrest and [the evidence at issue], the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct' " (*People v Bradford*, 15 NY3d 329, 333 [2010], quoting *Conyers*, 68 NY2d at 983).

 Defendant acknowledges that "attenuation of evidence from police misconduct" is generally a mixed question of law and fact that is beyond our review unless there is no record support for the Appellate Division's determination (*People v Williams*, 17 NY3d 834, 835 [2011]; *but cf. Matter of Leroy M.*, 16 NY3d 243, 247 [2011]). Here, we conclude that there was record support at the hearing to support the Appellate Division's attenuation finding.

The hearing testimony established that prior to the arrest, the detective had gathered detailed descriptions of the perpetrator from two witnesses, and learned from one witness—who was acquainted with the perpetrator—that he was known by the street name "Izz." The detective's investigation further uncovered that "Izz" was the same man known to police as "Michael Wright" and that the physical description on his rap sheet matched the physical descriptions the witnesses gave the detective. The rap sheet also indicated that "Michael Wright" was also known as "Lester Jones." Finally, even before the illegal arrest, the detective had obtained a photograph of a person he believed to be the perpetrator and placed it in his case folder.

By the time the sergeant effected the illegal arrest, the detective already had in his possession sufficient evidence to establish probable cause for defendant's arrest.[1] Within 30 minutes of arriving at the precinct, the sergeant was in contact with the detective, and that conversation led the sergeant to the detective's case folder and the photograph of defendant. At that

---

1. The dissent believes that the detective was obligated to verify that the nickname "Izz," which he obtained from his colleague at the Manhattan Gang Unit, was reliable (dissenting op at 458). However, a police officer is entitled to rely on a name given him by a fellow officer as part of his investigation (*see People v Ketcham*, 93 NY2d 416, 420 [1999]).

point, the sergeant possessed probable cause to detain defendant until the lineup identification eight hours later. Thus, there is clear record support for the Appellate Division's finding that, at the time of the lineup identification, any taint of the illegal arrest had been attenuated.[2]

■ Defendant, nonetheless, argues that the disorderly conduct charge was a "mere pretext" and that "there is no record support for any conclusion but that the police obtained the lineup identification 'by exploitation' of [defendant's] illegal arrest." The sergeant plainly admitted at the hearing that, in addition to the disorderly conduct charge—for which he could not issue a summons because defendant lacked identification—he took defendant into custody because he also believed defendant to be the perpetrator of the earlier robbery. The Appellate Division concluded that the sergeant possessed some information connecting defendant to the robbery and acted in good faith on that information, but that it fell short of probable cause (see e.g. Bradford, 15 NY3d at 334 [noting that there was "no demonstrable proof in the record that the initial detention of defendant was motivated by bad faith or a nefarious police purpose," and observing that although the Appellate Division concluded that the trooper lacked probable cause upon the initial arrest, it found that he possessed a "fair basis" to approach and detain the defendant]). Here, there is record support for the Appellate Division's finding that the police did not exploit the illegal arrest.

■ We also conclude that the Appellate Division correctly held that the trial court properly exercised its discretion by allowing the store employee to testify concerning threats made to him by third parties both before and during trial relative to his testimony. There was sufficient circumstantial evidence to connect those threats to defendant, and the court charged the jury that it needed to determine first whether the threats had, in fact, occurred, and, if so, then whether the threats demonstrated consciousness of guilt on defendant's part.

Defendant's remaining contentions are either unpreserved or without merit. Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN (dissenting). I find no record support for the Appellate Division's finding of attenuation. Rather, the rec-

---

2. Given our holding in this regard, we need not reach defendant's argument concerning the "fellow officer" rule.

ord demonstrates that the lineup identification was directly caused by, and the result of the exploitation of the illegal, indeed pretextual, arrest. Because I would find no attenuation as a matter of law, I respectfully dissent and would suppress the lineup identification.

As the majority correctly notes, in applying the attenuation doctrine, courts must consider the "temporal proximity" between the arrest and the discovery of the challenged evidence, "the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct" (*Brown v Illinois*, 422 US 590, 603-604 [1975] [citation omitted]; *People v Bradford*, 15 NY3d 329, 333 [2010]). But the majority glosses over the actual application of this doctrine: "intervening circumstances" typically include either release from custody or some action taken by a court (*see Johnson v Louisiana*, 406 US 356, 365 [1972] [intervening circumstances found where, "(p)rior to the lineup, at which (defendant) was represented by counsel, he was brought before a . . . magistrate to advise him of his rights and set bail"]; *People v Wilson*, 57 NY2d 786, 787-788 [1982] [intervening circumstances found because release followed by voluntary participation in lineup]; *People v Pleasant*, 54 NY2d 972, 974 [1981], *cert denied* 455 US 924 [1982] [intervening circumstances found because issuance of warrant followed illegal seizure, but preceded lineup]; *People v Poventud*, 300 AD2d 223, 223 [1st Dept 2002] [intervening circumstances where lineup was held two weeks after illegal arrest]). Here, there was no warrant issued, no judge involved, and defendant remained in custody from the time of his arrest until he was required to participate in the lineup, which occurred mere hours after he was placed in a holding cell. Moreover, the official misconduct was particularly flagrant: defendant was arrested on pretextual charges of disorderly conduct for blocking a sidewalk, in the wee hours of the morning, when there were no pedestrians around to be blocked.

There is no support for the determination that the telephone call between Sergeant Miller and Detective Sucic broke the causal chain between the illegal arrest and the lineup, and provided the intervening circumstances necessary for a finding of attenuation. The illegal arrest was the very event that facilitated the arresting officer's acquisition of information tying Mr. Jones to the robbery. It was the illegal arrest that directly prompted Miller to call Sucic. The illegal arrest also allowed Miller to make the comparison between the photograph

and Mr. Jones. In other words, the pretextual arrest was not "sufficiently distinguishable" from Miller's observation that Mr. Jones was the same person depicted in the photograph from Sucic's file, and thus there was a *direct* " 'connection between the violation of a constitutional right and the derivative evidence' " obtained by the police (*People v Jones*, 2 NY3d 235, 242 [2004], quoting *People v Burr*, 70 NY2d 354, 362 [1987], *cert denied* 485 US 989 [1988]).

Furthermore, Detective Sucic did not possess sufficient evidence to establish probable cause to arrest defendant at the time Miller took defendant into custody, or at the time Miller called Sucic. Sucic only had a vague description of the perpetrator, as being a large, six-foot tall black male, in his thirties, with a big nose. And although Sucic knew the possible street name of the perpetrator, "Izz," Sucic had no reliable way of knowing that the Gang Unit gave him the correct person matching the nickname "Izz." In fact, Detective Sucic was told that Michael Wright, or Lester Jones, was only "a possible name" corresponding to "Izz." Because Sucic never followed up his investigation by showing the photograph to either of the eyewitnesses, he could not know whether there were other people named "Izz" or whether the person with the nickname "Izz" was the person that the neighbor saw committing the robbery. Sucic's next step, in the normal course of his police investigation, would be to show the photograph to the eyewitness who told him the robber's street name was "Izz," question Mr. Jones, or show his photo to the complainant, not to arrest Mr. Jones.

Moreover, there was no evidence that Sucic communicated any information to Miller that would have established probable cause. Miller initially took defendant into custody based on the identification of an employee of a store close to the robbery scene. But that store employee merely saw defendant enter and exit the building around the time of the robbery; he did not see the actual robbery taking place. Then, the only information Sucic communicated to Miller was that he had a photograph of a suspect in his file. Two people with less than probable cause talking on the phone about their respective suspicions does not create probable cause. Indeed, that conversation was itself a part of Miller's investigation and by definition the opposite of attenuation.

Perhaps most troubling, the majority rests its affirmance on the Appellate Division's conclusion that Sergeant Miller acted in "good faith" in making the pretextual arrest (*see* majority op

at 456). "Good faith" or "fair basis" for an illegal arrest should not be confused with the well-meaning goal of trying to catch a criminal (*see United States v Voustianiouk*, 685 F3d 206, 216-217 [2d Cir 2012]). It is society's most basic understanding of law enforcement that police officers may not violate constitutional rights to effectuate the capture of lawbreakers. In *People v Bradford* (15 NY3d 329), the case cited by the majority, we held that a state trooper had a good faith basis to arrest a defendant known to the troopers as a 37-year-old registered sex offender in the company of two young teenage girls who had been reported missing by their mother. The girls were at defendant's apartment late at night and defendant tried to evade police contact by changing direction when he spotted a police car in the parking lot of his building, while he was exiting his apartment with the two young girls (*see id.* at 334-335). Our finding of "fair basis" to approach and detain in that case meant that, although lacking probable cause, the police officers had a reason to intervene in a suspected crime in progress to prevent potential imminent harm to two young children. Here, however, the robbery occurred over two weeks prior, so there were no safety concerns, no illegal activity was in progress and no reason compelled the officers to make the arrest (*see e.g. People v Martinez*, 37 NY2d 662, 668-669 [1975] [improper stop of vehicle was followed by necessary arrest after a gun was discovered on the rear floor of the automobile]). There was no fair basis or good faith to detain and transport Mr. Jones for disorderly conduct, a crime completely unrelated to robbery. Unlike *Bradford*, this was a sham arrest. Thus, the majority chips away at one of the most basic tenets of the Fourth Amendment:* a police officer may not place a defendant under arrest in order to obtain sufficient evidence to arrest him (*see Brown v Illinois*, 422 US at 605; *Dunaway v New York*, 442 US 200, 218 [1979]; *People v Robinson*, 13 NY2d 296, 301 [1963]).

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Chief Judge LIPPMAN dissents in an opinion in which Judge RIVERA concurs; Judge ABDUS-SALAAM taking no part.

Order affirmed.

---

* "The right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the persons . . . to be seized" (US Const Amend IV).