OPINION OF THE COURT
Steven M. Statsinger, J.
From May 18, 2015 to May 21, 2015, defendant was tried on an information charging him with driving while intoxicated, in violation of Vehicle and Traffic Law § 1192 (3) (count one), and operating a motor vehicle while ability impaired by the consumption of alcohol, in violation of Vehicle and Traffic Law § 1192 (1) (count two). On May 21, 2015, the jury convicted the defendant of count two and the court imposed sentence.
After a pretrial Dunaway/Huntley/refusal hearing, the court suppressed evidence of defendant’s refusal to take a breathalyzer test. The court found that the intoxicated driver testing unit (IDTU) officer had not given the defendant adequate warnings as to the consequences of the refusal. However, at trial, after hearing from the parties, the court granted the People’s application to cross-examine the defendant about that refusal in the event he elected to testify, relying on People v Harris (25 NY2d 175 [1969], affd 401 US 222 [1971]), which holds that a statement that has been suppressed due to a Miranda violation, and is hence inadmissible at trial, can still be used on cross-examination of the defendant for impeachment purposes.
Because this is a question of first impression, this written decision explains the court’s oral ruling.
*767 I. Factual Background
A. The Suppression Hearing
1. Testimony
At approximately 4:30 a.m. on January 12, 2014, Police Officer Timothy Kraft was on motor patrol in Upper Manhattan. He noticed a vehicle — a full-sized van — driving southbound on Tenth Avenue; the van was weaving from side to side within its lane. Kraft followed the van for several blocks as it continued to weave in this manner. The van turned onto Dyckman Street and continued to weave. It made a left turn from Dyckman Street onto Nagle Avenue that Kraft thought was peculiar. The van turned left legally, but then swung far out to the right during the turn, and suddenly stopped. Kraft could see no apparent reason for the van to do so.
After following the van a few blocks on Nagle Avenue, where it continued to weave, Kraft, who had concluded that the driver of the van was probably intoxicated, pulled it over near the intersection of Nagle Avenue and Sickles Street. Upon approaching the van, Kraft encountered the defendant who was driving the van and had opened the driver’s side window. Kraft observed that there was a woman in the passenger seat, and a strong odor of alcohol was emanating from the van. Defendant’s eyes were bloodshot and glassy.
In order to ensure that the odor of alcohol was not coming from the passenger, Kraft directed defendant to step out of the van and walk to its rear. Defendant complied, but needed to steady himself by placing his hand against the van several times as he did so. Kraft then asked the defendant to take a portable breath test (PBT). Defendant complied, and the instrument registered a blood alcohol content of .10%. Kraft told the defendant that he blew above the legal limit, and offered him a second test. Kraft did so, he explained, because if a person has recently taken a drink, the PBT might register the alcohol in that person’s mouth, and not in his system.
After waiting in the patrol car with defendant for 20 minutes, Kraft offered defendant a second PBT. This time, however, defendant only pretended to blow into the machine. Kraft knew this because the machine did not respond as it would if air had entered it. In addition, Kraft was holding the straw and could feel that there was no air going through it. Kraft warned the defendant that a refusal to take the test was a violation of law, and gave defendant another chance. However, defendant did the same thing; he made a show of pretending to blow into the *768 PBT machine without actually doing so. After four or five more similar episodes, Kraft placed defendant under arrest.
Eventually, Kraft transported defendant to the IDTU located inside the 28th Precinct. There, according to the IDTU video, an IDTU officer, Scott Rizzo, asked the defendant if he would take a breathalyzer test. Defendant agreed, and Rizzo showed him how to use the machine. The video reveals that defendant pretended to blow into the breathalyzer, but did not actually do so. Rizzo confronted the defendant, who faslely insisted that he was in fact blowing, and Rizzo warned the defendant that if he persisted in his refusal, his driver’s licence would be suspended. Defendant again pretended to blow, and Rizzo again gave him the same warning. This went on for some time until, eventually, the breathalyzer timed out without defendant ever having actually blown into it. After this, Rizzo asked the defendant if he would take a physical coordination test, but defendant refused.
2. The Court’s Ruling
As pertinent here, the court ruled first that the traffic stop was legal. While the court concluded that Officer Kraft did not have reasonable suspicion to stop the van for any traffic infraction, the totality of the circumstances surrounding Kraft’s observations of the van — the time of day, the weaving itself and its duration, and the peculiar left turn — gave rise to a reasonable suspicion that the driver of the van was, at a minimum, impaired. The court accordingly declined to suppress defendant’s “refusal by conduct” to take the PBT.
However, with respect to the breathalyzer, the court concluded that defendant’s similar “refusal by conduct” at the IDTU had to be suppressed because Officer Rizzo, the IDTU officer, had not given the defendant adequate warnings. While Rizzo warned that defendant’s refusal could lead to the suspension of his driver’s licence, he did not warn that the refusal could lead to a revocation of the licence, and did not explain that these consequences could arise even if defendant were found not guilty at trial. In addition, Rizzo neglected to warn the defendant that the refusal could be admitted against him as evidence at trial. Because most of the content of the IDTU video depicted defendant’s efforts to thwart the breathalyzer test, the court also suppressed the video. Instead, the court held, Rizzo could testify as to his observations of defendant’s physical condition and demeanor, and that defendant refused to take a coordination test.
*769 B. The Trial
1. The Testimony
At trial, Officer Kraft testified about his pursuit of the van and defendant’s appearance, demeanor and conduct up to the time of his arrest. This testimony was not materially different from that summarized above, although by agreement between the parties, the officer did not testify as to the PBT result after defendant’s first blow, only that there was a result.
In addition, Officer Rizzo testified that, while at the IDTU, defendant smelled strongly of alcohol — the odor was so strong that Rizzo could identify it from a distance — and had watery, bloodshot eyes. Rizzo also testified that defendant refused to take a physical coordination test.
It was the opinion of both officers that defendant was intoxicated.
2. The Disputed Ruling
After the People rested, and outside the presence of the jury, the court asked the People whether they would seek to cross-examine the defendant about the IDTU refusals if he took the stand. The court wanted to ensure that the defendant would know the court’s ruling on this in advance and could make a reasoned decision whether to testify. The People indicated that they would seek to cross-examine the defendant about his IDTU refusals and, over defense objection, the court, relying on Harris, permitted it. The court ruled, specifically, that defendant could be impeached with the refusal even if he did not open the door by denying that he had refused the breathalyzer test.
Defendant declined to testify, citing, in part, this ruling as his reason, and the defense rested.
II. Discussion
It appears that no court in New York has expressly considered the question whether a defendant can be impeached, should he elect to testify at trial, by a refusal to take a breathalyzer test, where that refusal was suppressed under Vehicle and Traffic Law § 1194 (2) (f). In this court’s view, however, since it is clear that impeaching a defendant on cross-examination with his refusal is not the same as “admitting” the refusal into evidence, such impeachment is permissible by analogy to Harris. If a defendant can be impeached on cross-examination with a statement obtained in violation of Miranda, he can also be impeached on cross-examination with a refusal that was obtained in violation of Vehicle and Traffic Law § 1194 (2) (f).
*770 A. Implied Consent and the Right of Refusal
Under Vehicle and Traffic Law § 1194 (2) (a) (1), every person operating a motor vehicle in New York State “shall be deemed to have given consent to a chemical test,” including a breath test, where, as here, a police officer has “reasonable grounds” to believe that person was doing so while intoxicated. The person has a limited statutory right to refuse the test. But, if he does, that refusal shall be “admissible in any trial” that is based on a violation of any of the provisions of Vehicle and Traffic Law § 1192, as long as the “person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal” and “the person persisted in the refusal.” (§ 1194 [2] [fl.)
Here, after a hearing, the court concluded that while at the IDTU, defendant refused a breath test. It so ruled because it is clear that where a defendant orally consents to the test, but then deliberately thwarts it, that behavior constitutes a refusal. For example, in Matter of Van Sickle v Melton (64 AD2d 846 [4th Dept 1978]), where, as here, a driver repeatedly pretended to blow into a breathalyzer, the Court concluded that this conduct amounted to a refusal to take the test.
Defendant was also warned of some of the consequences of his refusal, and persisted in refusing. But, since, as described above, defendant was not warned of all of the consequences of refusal, the Court held that the People could not admit evidence of the refusal at trial. (See e.g. People v Boone, 71 AD2d 859 [2d Dept 1979] [error to admit evidence of refusal at trial where refusal warnings were incomplete].)
B. What Does “Admissible in Any Trial” Mean?
A refusal obtained after incomplete refusal warnings is not “admissible in any trial.” (Vehicle and Traffic Law § 1194 [2] [f].) The question raised here is the meaning of the statutory phrase “admissible in any trial.” That phrase could mean that the People cannot elicit the refusal under any circumstances, or it could mean only that the People cannot introduce evidence of the refusal in its case-in-chief. In this case, the court concluded that the phrase refers only to admission in the People’s case-in-chief at trial, and that the statute does not prohibit the People from using a suppressed refusal for impeachment purposes on cross-examination of the defendant.
In this regard, the statutory protections of section 1194 (2) (f) are highly analogous to those of the Miranda rule. It is black-letter law that otherwise voluntary statements obtained from the defendant in violation of Miranda are inadmissible in *771 the prosecution’s case at trial. In addition, it has been equally clear, for decades, that otherwise voluntary statements obtained in violation of Miranda can be used for impeachment purposes. Indeed, the United States Supreme Court affirmed that very principle in Harris: “The shield provided by Miranda cannot be perverted into a license to use peijury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner’s credibility was appropriately impeached by use of his earlier conflicting statements.” (401 US at 226.)
It is equally true that un-Mirandized statements are admissible for general impeachment purposes, and not only where the defendant has “opened the door” to them by denying making them. (See e.g. People v Jorge, 29 Misc 3d 1237[A], 2010 NY Slip Op 52181 [U] [Sup Ct, Bronx County 2010]; People v Wise, 46 NY2d 321, 328 [1978] [un-Mirandized statement properly used on cross-examination of the defendant because it was “relevant to issues otherwise before the jury”].)
Miranda is clearly an appropriate analogy for the question at bar. Just as Miranda is a “prophylactic” rule intended to protect a constitutional privilege — the right to be free from compelled self-incrimination (e.g. Maryland v Shatzer, 559 US 98, 103 [2010]) — the rule prohibiting admission of a refusal that has not been preceded by adequate warnings is a prophylactic intended to protect a statutory privilege — the right to refuse a chemical test. If anything, section 1194 (2) (f) should be subject to an even more liberal interpretation than the Miranda rule since the privilege at issue is only statutory and does not have a constitutional dimension. (South Dakota v Neville, 459 US 553 [1983] [a person suspected of drunk driving does not have a constitutional right to refuse to take a blood test]; Schmerher v California, 384 US 757 [1966] [no Fifth Amendment violation in taking blood sample from drunk driving suspect against his will].)
It also bears noting that there are other forms of evidence that are not admissible at trial as part of the prosecution’s case-in-chief, but that can still be used to impeach the defendant on cross-examination. People v Alexander (2003 WL 21169075 [Poughkeepsie City Ct, May 12, 2003, No. 03-28025]) holds that statements for which the People failed to provide notice under CPL 710.30, although not admissible at trial, can still be used for impeachment purposes if the defendant takes the stand. (See also People v Lancaster, 16 Misc 3d 1128[A], *772 2007 NY Slip Op 51598[U], *4 [Hastings-on-Hudson Just Ct 2007] [collecting cases].) Similarly, statements obtained in violation of the right to counsel, even though inadmissible at trial under the exclusionary rule, can still be used to impeach the defendant on cross-examination. (People v Ricco, 56 NY2d 320 [1982].)
Moreover, prior inconsistent statements that are hearsay are not admissible in the prosecution’s case at trial, but a witness can be impeached with them on cross-examination. (E.g. People v Duncan, 46 NY2d 74 [1978].) And, finally, even the Sandoval rule illustrates this principle. (People v Sandoval, 34 NY2d 371 [1974].) Evidence of a defendant’s prior “criminal, vicious or immoral conduct” is not admissible at trial, but is, subject to the trial court’s discretion, a proper subject of cross-examination of the defendant. (Id. at 376.)
Accordingly, by analogy to Miranda, the court concluded that the rule rendering unwarned refusals inadmissible at trial should be applied in the same manner as the rule rendering unwarned custodial statements inadmissible at trial. In either instance, the defendant can be impeached on cross-examination with that material. Similarly, as with statements obtained in violation of Miranda, the impeachment use of a suppressed refusal is not limited to situations where the defendant opens the door to the refusal by denying that he refused a breath test. As with a suppressed statement, it is “reliable evidence” (United States v Nichols, 438 F3d 437, 444 [4th Cir 2006]) that the prosecution can use for general impeachment purposes.
C. The Exercise of the Court’s Discretion
Of course, a trial court has broad discretion in setting the boundaries of cross-examination, including the cross-examination of the defendant. (See e.g. People v Fiore, 12 NY2d 188 [1962]; People v Schwartzman, 24 NY2d 241, 244 [1969] [“The nature and extent of cross-examination is subject to the sound discretion of the Trial Judge”].) As with any discretionary call, such a ruling requires a balancing of the probative value of the potential impeachment material and its potential for prejudice. (E.g. People v Morris, 21 NY3d 588 [2013].)
In this context, however, the notion of prejudice does not simply mean that a particular form of impeachment evidence might make a conviction more likely. It means that the impeachment might make a conviction that is based on an improper ground more likely. Some examples of this type of prejudice include Molineux evidence, or Sandoval material *773 elicited on cross-examination, that might lead the jury to convict on the improper ground that the defendant has a propensity to commit crimes (e.g. People v Cass, 18 NY3d 553 [2012] ), or graphic or gruesome photographs of a victim that might lead to a conviction on the improper ground that the crime was heinous. (Cf. People v Wood, 79 NY2d 958 [1992] [graphic photographs properly admitted for a purpose other than to inflame the jury].)
Here, the court conducted such a balancing and concluded that the risk of prejudice was low and that it was outweighed by the probative value of the evidence. The risk of prejudice was low because cross-examination of defendant’s refusal to take a breathalyzer test would have been very unlikely to lead the jury to an improper or forbidden inference of guilt. While this cross-examination might have contributed to a finding that the defendant believed himself to be guilty, and hence that he was, that is a perfectly proper inference for a jury to draw, and is not unduly prejudicial. Indeed, courts regularly admit far more inflammatory conduct as evidence of consciousness of guilt. (See e.g. People v Kims, 24 NY3d 422 [2014] [evidence of defendant’s escape was properly admitted as probative of consciousness of guilt]; People v Jones, 21 NY3d 449, [2013] [evidence that third parties threatened witness on defendant’s behalf properly admitted as probative of consciousness of guilt].)
In addition, the probative value of the evidence was high. That the defendant deliberately evaded the breathalyzer test suggested that he feared he would fail it, and, as evidence of consciousness of guilt, it was relevant to at least two specific elements that the People had to prove. First, the conduct tended to show that the defendant was operating a motor vehicle, since a person who was not the driver would have no reason to fear a breath test. In addition, it tended to show that defendant was intoxicated or impaired because it conveyed his belief that this fact was true.
III. Conclusion
Accordingly, for the foregoing reasons, the court held that the People could cross-examine the defendant about his refusal to take a breathalyzer test, even though it had suppressed that refusal due to incomplete warnings.