■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN GALTIERI, Appellant. [57 NYS3d 191]—

Appeal by the defendant from a judgment of the Supreme Court, Richmond County (Rooney, J.), rendered May 27, 2009, convicting him of murder in the second degree and criminal possession of a weapon in the second degree (three counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is modified, on the law, by vacating the conviction of criminal possession of a weapon in the second degree pursuant to Penal Law § 265.03 (3) under count four of the indictment, vacating the sentence imposed thereon, and dismissing that count of the indictment; as so modified, the judgment is affirmed.

The defendant, a retired New York City Police Department (hereinafter NYPD) police officer, was convicted of murder in the second degree and three counts of criminal possession of a weapon in the second degree in connection with the shooting death of his former wife (hereinafter the victim). At trial, the People presented evidence that, during their marriage, the de-

fendant had physically assaulted and threatened the victim and that, at some point, the victim and the daughter of the defendant and the victim moved out of the marital home. The evidence also demonstrated that the defendant and the victim were divorced in 2003 after several years of contentious matrimonial litigation. A judgment of divorce was entered by a court in New Jersey awarding the victim $400,000 plus $2,200 per month in permanent alimony, 50% of the proceeds of a mortgage, and $30,000 for jewelry the defendant had taken.

After a lengthy period of time in which the defendant failed to pay any of the monies he was required to pay by the judgment of divorce, a New Jersey domestic relations order directed the NYPD Pension Fund (hereinafter the Pension Fund) to send almost the entirety of the defendant's pension benefits to the victim. The People presented the testimony of the general counsel of the Pension Fund, who testified that the defendant regularly complained to her via telephone and letters when he learned that the bulk of his pension had been garnished in favor of the victim, and that the defendant threatened to file and then subsequently did file a lawsuit against the Pension Fund in connection with its compliance with the garnishment. At the time of the shooting, the victim had been receiving $2,722 of the pension each month and the defendant had been receiving $7.05.

On January 30, 2007, surveillance video at the Richmond County Supreme Court depicted the defendant entering the building at some point after 9:00 a.m. According to two court clerks who testified at the trial, the defendant told them on that day that he had driven up from Florida and was planning to stay around the area for a while. He told one of the clerks that he was suing the City of New York "in reference to his pension" " because [$7 is] all he's getting." The defendant left the courthouse around 11:00 a.m.

At approximately 5:51 p.m. that same day, the victim was shot to death in the daughter's car while waiting to pick up the daughter at a park-and-ride in Staten Island. A Staten Island Highway Patrolman testified that he was parked in an unmarked patrol car at the park-and- ride when he heard gunshots that were so loud he thought they were fired at him. He saw the taillights of a vehicle leaving the park-and-ride and heading toward Richmond Parkway. The patrolman testified that as he exited the park-and-ride in pursuit of the vehicle, he saw the victim slumped in the driver's seat of the car with a gunshot wound to her head.

A detective who responded to the scene shortly thereafter

viewed surveillance video of the park-and-ride and observed a vehicle that appeared to be a dark Chrysler Concorde in that location shortly before the shooting. The same vehicle was seen in videos taken by other cameras in the park-and-ride. That detective learned that the defendant owned a 2002 gray Chrysler Concorde, and later that night a nationwide alarm was put out to law enforcement to be on the lookout for the defendant's vehicle. The defendant was stopped and arrested by a South Carolina police officer the next morning at approximately 9:25 a.m. At the time of the arrest, the South Carolina police found a .22 caliber handgun in the defendant's trunk. Thereafter, ballistics testing established that the murder weapon was a .38 caliber handgun, not the .22 caliber handgun recovered from the defendant's trunk. The murder weapon was not recovered.

At trial, the daughter testified that she had witnessed the defendant physically assault and verbally abuse the victim during the course of the marriage. The People also elicited testimony and introduced documentary evidence, inter alia, pertaining to the divorce litigation, the garnishment of the defendant's pension, a note the defendant had left on the daughter's car in 2005, and statements the defendant had made to a coworker a month or two before the incident to the effect that he would "like to kill the bitch," referring to the victim, and that he would "like to shoot" her.

In addition, the People introduced expert forensic testimony comparing photos taken from the surveillance videos with photos of the 2002 gray Chrysler Concorde that the defendant was driving when he was stopped in South Carolina. The forensic expert compared certain distinguishing features of the defendant's car with the car depicted in the surveillance videos and also pointed out identifying features, such as decals and objects seen through the window, on the car in the surveillance videos that matched the same items on and in the defendant's vehicle. The expert also compared surveillance video from the courthouse showing a distinctive multicolored jacket worn by the defendant with surveillance video from the park-and-ride lot later that afternoon, which shows a man resembling the defendant holding a similar jacket.

The jury subsequently convicted the defendant of murder in the second degree and three counts of criminal possession of a weapon in the second degree.

Contrary to the defendant's contention, the Supreme Court's *Molineux* ruling (*see People v Molineux*, 168 NY 264 [1901]) constituted a provident exercise of discretion. The evidence at

issue was admissible as relevant background material to explain to the jury the sequence of events and the relationship between the defendant and the victim, and as evidence of the defendant's motive and intent (*see People v Jones*, 21 NY3d 449, 456 [2013]; *People v Smalls*, 145 AD3d 802, 802 [2016]; *People v Paige*, 134 AD3d 1048, 1056 [2015]; *People v Bruno*, 127 AD3d 986, 986 [2015]).

The defendant's contention, raised in his pro se supplemental brief, that he was deprived of the effective assistance of counsel is based, in part, on matter appearing on the record and, in part, on matter outside the record, and thus constitutes a "mixed claim" of ineffective assistance (*People v Maxwell*, 89 AD3d 1108, 1109 [2011]). In this case, it is not evident from the matter appearing on the record that the defendant was deprived of the effective assistance of counsel (*see People v Marryshow*, 135 AD3d 964, 965 [2016]). Since the defendant's claim of ineffective assistance of counsel cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding would be the appropriate forum for reviewing the claim in its entirety (*see id.* at 965; *People v Freeman*, 93 AD3d 805, 806 [2012]).

The defendant was convicted of three counts of criminal possession of a weapon in the second degree. The first two convictions (Penal Law § 265.03 [1] [b]; [3]), under counts two and three of the indictment, respectively, relate to the murder weapon that was never found. The third conviction (Penal Law § 265.03 [3]), under count four of the indictment, relates to the .22 caliber handgun that was found in the trunk of the defendant's vehicle when he was stopped in South Carolina. The defendant contends that the evidence was legally insufficient with respect to the conviction under count four of the indictment. The defendant correctly contends that the People failed to establish with legally sufficient evidence that New York State had territorial jurisdiction to prosecute that crime because the .22 caliber handgun was not the murder weapon. Viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620, 621 [1983]), we find that it was not legally sufficient to establish, beyond a reasonable doubt, that the defendant's possession of the gun—an element of the offense—occurred within this State (*see* CPL 20.20 [1] [a]; *People v Greene*, 3 AD2d 768 [1957]). Accordingly, that conviction must be vacated, the sentence imposed thereon vacated, and that count of the indictment dismissed.

The defendant's remaining contentions, raised in his pro se supplemental brief, are without merit. Mastro, J.P., Sgroi, Maltese and Duffy, JJ., concur.