[937 NE2d 528, 910 NYS2d 771]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANA R. BRADFORD, Appellant.

Argued September 15, 2010; decided October 19, 2010

## POINTS OF COUNSEL

*Timothy P. Donaher, Public Defender*, Rochester (*Kimberly F. Duguay* of counsel), for appellant. The Appellate Division misapplied the law of attenuation when: (1) it failed to consider the factors of attenuation in light of the investigatory purpose for the illegal arrest; and (2) it required the presence of egregious police misconduct for application of the exclusionary rule. (*People v Morales*, 42 NY2d 129; *People v Bigelow*, 66 NY2d 417; *People v Borges*, 69 NY2d 1031; *People v Centano*, 76 NY2d 837; *People v Hicks*, 68 NY2d 234; *People v Yukl*, 25 NY2d 585; *People v Ryan*, 12 NY3d 28; *People v Battaglia*, 82 AD2d 389, 56 NY2d 558; *People v Brnja*, 50 NY2d 366; *Brown v Illinois*, 422 US 590.)

*Michael C. Green, District Attorney*, Rochester (*Geoffrey Kaeuper* of counsel), for respondent. The Appellate Division applied the correct legal standard for attenuation and its determination had record support. (*People v Rogers*, 52 NY2d 527, 454 US 898; *United States v Crews*, 445 US 463; *Silverthorne Lumber Co. v United States*, 251 US 385; *People v Russell*, 269 AD2d 771; *People v Boodle*, 47 NY2d 398, 444 US 969; *People v Martinez*, 37 NY2d 662; *People v Stith*, 69 NY2d 313; *People v Jones*, 2 NY3d 235; *People v Burr*, 70 NY2d 354, 485 US 989; *People v Conyers*, 68 NY2d 982.)

**OPINION OF THE COURT**

GRAFFEO, J.

This appeal requires us to consider whether there is record support for the Appellate Division's conclusion that the exclusionary rule does not require the suppression of defendant's confession. Because there is a basis in the record for the Appellate Division's determination that the confession was sufficiently attenuated from defendant's initial detention by the police, we affirm.

In November 2003, defendant began a relationship with a young woman he met on a telephone "chat line." He was a 37-year-old registered sex offender; she was a 16 year old who had been adjudicated a "person in need of supervision" under article 7 of the Family Court Act.* In order to visit with Jane, defendant would pick her up near her mother's house in Ontario County, drive her to his apartment in Monroe County (a 30 to 45 minute trip each way) and then return her home later in the day. During these visits, defendant usually supplied Jane with alcoholic beverages and he engaged in sexual intercourse with her on several occasions.

Defendant and Jane eventually made plans to celebrate New Year's Eve. On the afternoon of December 31, 2003, Jane and her 15-year-old sister (also adjudicated a "person in need of supervision") were preparing to leave their house when their mother's boyfriend overheard Jane on the telephone telling someone that she was going out in 10 minutes. When the mother's boyfriend left for work shortly thereafter, he noticed a grey Mitsubishi parked around the corner from the house, with a man in the driver's seat speaking on a cell phone. Because he did not recognize the car or the driver, he jotted down the vehicle's license plate number before continuing to his workplace.

At around 5:00 P.M. that evening, Jane's mother left her job, went food shopping and then drove to her boyfriend's place of employment to bring him dinner. He told her what he had observed earlier that day and provided her with the vehicle's license plate number. On her way home, she decided to stop at the State Police barracks to give them information about her daughters and the vehicle that her boyfriend had observed. Supplied with this information, the trooper undertook a search of

---

* Because the girl's identity must remain confidential (*see* Civil Rights Law § 50-b), in this opinion we refer to her as "Jane."

vehicle registration records and learned that the grey Mitsubishi belonged to defendant. The computer search also revealed defendant's status as a registered sex offender and his home address in Rochester.

When Jane's mother arrived home at approximately 9:30 P.M., she discovered that neither girl was present, despite their 8:30 P.M. curfew. She telephoned the trooper that she had spoken to earlier and he issued a "file 6" bulletin, which notified police agencies to be on the lookout for two young women suspected as runaways. A short time later, a trooper patrolling in the vicinity of defendant's residence received a police radio transmission directing him to defendant's address, where he located the grey Mitsubishi with the identified license plate in the parking lot. The trooper saw defendant exiting the apartment building with two females who matched the description of Jane and her sister. As defendant walked to the parking lot, he noticed the State Police vehicle and changed direction. The trooper immediately approached defendant, confirmed his name, handcuffed him and placed him in the police vehicle. After conferring with Jane and her sister, the trooper called for another police car to transport the girls.

Upon arriving at the State Police barracks at about 11:00 P.M., defendant was taken to a room and issued *Miranda* warnings. He indicated that he was willing to speak to the trooper but the officer did not engage in further conversation at that point. Jane and her sister were placed in a different room and interviewed. Jane told the police that defendant was her boyfriend and that they had engaged in sexual intercourse on a number of occasions at his apartment. Her sister provided some corroborating information and both young women acknowledged that defendant had supplied them with alcohol.

Defendant was confronted with these statements at approximately 1:00 A.M. He then admitted to the police that he gave Jane alcohol and had intercourse with her once, though he claimed that Jane had represented that she was 17 years old. Defendant eventually revised his story, admitting that he had sex with Jane three times and that both girls had consumed alcohol in his presence. After an investigator prepared his typewritten confession, defendant again waived his *Miranda* rights and signed the document shortly before 4:00 A.M.

As a result of the admissions he provided and the statements of the sisters, defendant was charged with multiple counts of

rape in the third degree (*see* Penal Law § 130.25 [2]) and endangering the welfare of a child (*see* Penal Law § 260.10 [1]). Defendant moved to suppress his statements to the police, claiming that his arrest in the parking lot of his apartment building lacked probable cause. County Court denied the motion, concluding that it was proper to detain defendant to conduct a preliminary investigation and that the statements from Jane and her sister justified the arrest. Following a jury trial, defendant was convicted of four counts of statutory rape in the third degree and six counts of endangering the welfare of a child. Defendant was sentenced as a second felony offender to an aggregate 4½-to-9-year term of imprisonment and orders of protection were issued relating to Jane and her sister.

The Appellate Division modified by amending the length of time that the orders of protection would remain in force, but otherwise affirmed (61 AD3d 1419 [4th Dept 2009]). The court determined that defendant had been arrested without probable cause, but that his inculpatory statements were admissible because they were sufficiently attenuated from the arrest. A Judge of this Court granted leave to appeal (13 NY3d 794 [2009]).

Evidence that is obtained through illegal police action is not automatically subject to the exclusionary rule (*see e.g. People v Jones*, 2 NY3d 235, 241-242 [2004]; *People v Young*, 55 NY2d 419, 425 [1982], *cert denied* 459 US 848 [1982]). For example, a confession that is made after an arrest without probable cause is not subject to suppression if the People adequately demonstrate that the inculpatory admission was "attenuated" from the improper detention; in other words, it was "acquired by means sufficiently distinguishable from the arrest to be purged of the illegality" (*People v Conyers*, 68 NY2d 982, 983 [1986]). The attenuation doctrine requires a court to consider "the temporal proximity of the arrest and the confession, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct" (*id.*; *see Brown v Illinois*, 422 US 590, 603-604 [1975]). Because application of the attenuation doctrine is a mixed question of law and fact (*see e.g. People v Ryan*, 12 NY3d 28, 31 [2009]; *People v Divine*, 6 NY3d 790, 791 [2006]), our review is limited and the determination of the Appellate Division may be disturbed only if there is no evidence in the record to support it (*see People v Paulman*, 5 NY3d 122, 129 [2005]).

We hold that the proof in this case is sufficient to support the finding of attenuation. After defendant was initially detained

around 10:30 P.M., he was taken to a police barracks and given *Miranda* warnings about 30 minutes later (*see People v Conyers*, 68 NY2d at 983 [post-arrest *Miranda* warnings are an "important" attenuation factor]; *Brown v Illinois*, 422 US at 603). Defendant proceeded to waive his *Miranda* rights and offered to talk to the police. But he was not questioned at that time; rather, his interrogation did not begin until 1:00 A.M.—about 2½ hours after defendant was first handcuffed (*see generally People v Rogers*, 52 NY2d 527, 532 [1981] [three hours], *cert denied* 454 US 898 [1981]).

In the interim, the police secured statements from Jane and her younger sister, which clearly established probable cause for defendant's arrest. Because those statements were obtained independent of defendant's detention, they were not subject to suppression. The fact that defendant gave a confession after being confronted with the statements constitutes a "significant attenuating factor" that reasonably could be deemed a "precipitating cause" of his admissions (*id.* at 534). Defendant was also not subjected to any pre-*Miranda* interrogation, nor was he mistreated while in police custody (*see id.*). Thus, it was reasonable for the Appellate Division to conclude that defendant's confession was the product of the independently obtained statements from Jane and her sister, along with his willingness to speak to the police—not the result of the initial detention in the parking lot.

In addition, there is no demonstrable proof in the record that the initial detention of defendant was motivated by bad faith or a nefarious police purpose (*see e.g. People v Borges*, 69 NY2d 1031, 1033 [1987]; *People v Boodle*, 47 NY2d 398, 404 [1979], *cert denied* 444 US 969 [1979]; *People v Martinez*, 37 NY2d 662, 670 [1975]). Although the Appellate Division decided that probable cause was lacking when defendant was apprehended—an issue we do not reach—the trooper nevertheless had a "fair basis" (*People v Martinez*, 37 NY2d at 671) for approaching and detaining defendant: he knew that defendant was a registered sex offender in the company of two teenage girls who had been reported as missing by their mother; that they were at defendant's apartment complex at approximately 10:30 P.M.; and that defendant's car had been observed in close proximity to the girls' residence on the last occasion that they had been seen. While reasonable minds may differ as to the precise level of objective suspicion that was present at that moment and whether the actual extent of police interference was justified,

the trooper undoubtedly had a good faith basis for the intervention. Simply put, this is not the type of situation that the exclusionary rule's deterrence principle was designed to address.

In sum, there is record support for the Appellate Division's application of the attenuation doctrine in this case and we therefore lack the power to disturb its determination.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order affirmed.