# SUPREME COURT OF THE STATE OF NEW YORK
## Appellate Division, Fourth Judicial Department

529
KA 11-01156
PRESENT: SCUDDER, P.J., PERADOTTO, SCONIERS, VALENTINO, AND MARTOCHE, JJ.

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

GENNA A. TURNER, DEFENDANT-APPELLANT.

CHARLES T. NOCE, CONFLICT DEFENDER, ROCHESTER (JOSEPH D. WALDORF OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (MATTHEW DUNHAM OF COUNSEL), FOR RESPONDENT.

-----------------------------------------------------------------------------------

Appeal from a judgment of the Monroe County Court (Vincent M. Dinolfo, J.), rendered May 12, 2011. The judgment convicted defendant, upon her plea of guilty, of attempted murder in the second degree, burglary in the first degree and criminal contempt in the first degree.

It is hereby ORDERED that the judgment so appealed from is affirmed.

Memorandum: On appeal from a judgment convicting her upon a plea of guilty of, inter alia, attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), defendant contends that County Court erred in refusing to suppress the statements that she made during an interview at the police station and that she did not knowingly, voluntarily and intelligently enter her plea because the court did not advise her that she would be subject to a five-year period of postrelease supervision (PRS) (*see generally People v Catu*, 4 NY3d 242, 245).

We conclude that the court (Castro, A.J.) properly refused to suppress the statements defendant made at the police station. Although defendant made an inculpatory statement after she was placed in a patrol vehicle and additional inculpatory statements after she was transported to the police station, the court granted suppression of the statement made in the patrol vehicle on the ground that her detention constituted an arrest for which the police officer lacked probable cause. The court refused, however, to suppress the subsequent statements at the police station based on its determination that they were "attenuated from the unlawful arrest." We agree with the People that the record supports the court's determination (*see generally People v Bradford*, 15 NY3d 329, 333-334). Although there was a period of only one hour between the time of the illegal arrest and the time of defendant's statements at the police station (*cf. People v Russell*, 269 AD2d 771, 772), we note that defendant was given *Miranda* warnings before the stationhouse interview (*see Bradford*, 15 NY3d at 334; *Russell*, 269 AD2d at 772; *People v Salami*, 197

AD2d 715, 715-716, *lv denied* 83 NY2d 876).  Moreover, the victim's identification of defendant as the perpetrator constitutes a significant intervening event (*see Bradford*, 15 NY3d at 334; *Russell*, 269 AD2d at 772) inasmuch as that identification provided the police with probable cause for defendant's arrest (*see People v Divine*, 21 AD3d 767, 767, *affd* 6 NY3d 790; *Salami*, 197 AD2d at 715).  Lastly, there was no flagrant misconduct or bad faith on the part of the police officer who took defendant into custody (*see Bradford*, 15 NY3d at 334; *Divine*, 21 AD3d at 767).

We reject defendant's contention that the court erred in effectively giving the People a "second bite at the apple" when it reopened the suppression hearing (*see generally People v Havelka*, 45 NY2d 636, 643). The prosecutor established that it was unclear whether defendant was challenging her statements as involuntarily made (*see* CPL 60.45) or as the fruit of an illegal arrest.  In any event, we conclude that the court properly exercised its discretion in reopening the hearing (*see e.g. People v Binion*, 100 AD3d 1514, 1516; *People v Ramirez*, 44 AD3d 442, 443, *lv denied* 9 NY3d 1008; *People v Cestalano*, 40 AD3d 238, 238, *lv denied* 9 NY3d 921).

Following the court's suppression ruling, defendant agreed to enter a plea of guilty to the indictment with the understanding that the court would impose a sentence of incarceration of 15 years.  It is undisputed that there was no mention of PRS during the course of the plea allocution.  "Because a defendant pleading guilty to a determinate sentence must be aware of the [PRS] component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the failure of a court to advise of [PRS] requires reversal of the conviction" (*Catu*, 4 NY3d at 245; *see People v Hill*, 9 NY3d 189, 191, *cert denied* 553 US 1048).  It is axiomatic that "a plea cannot be knowing, voluntary and intelligent if a defendant is ignorant of a direct consequence because of a deficiently conducted allocution" (*People v Louree*, 8 NY3d 541, 545).

The Court of Appeals has held that, generally, preservation of a *Catu* error is not required.  "If the trial judge does not mention [PRS] at the allocution, . . . a defendant can hardly be expected to move to withdraw his [or her] plea on a ground of which he [or she] has no knowledge.  [Moreover,] if the trial judge informs the defendant of [PRS] during the course of sentencing, . . . a defendant may no longer move to withdraw the plea since a motion may only be made under CPL 220.60 (3) '[a]t any time *before* the imposition of sentence' (emphasis added)" (*Louree*, 8 NY3d at 546).  The Court of Appeals has also held in at least one instance, however, that a defendant is required to preserve a *Catu* error (*see People v Murray*, 15 NY3d 725).

In *Murray*, the defendant was informed prior to his plea that he faced a two-year period of PRS but, when he appeared for sentencing, the court informed him "at the outset of the sentencing proceeding" of the exact sentence that would be imposed, which included a three-year period of PRS (*id.* at 726-727).  The defendant did not object to the imposition of the three-year period of PRS and, on appeal, the Court wrote that,

"[b]ecause [the] defendant could have sought relief from the sentencing court in advance of the sentence's imposition, *Louree's* rationale for dispensing with the preservation requirement is not presently applicable" (*id.* at 727).

Since *Louree*, courts have attempted to identify at what point a defendant "could have sought relief . . . in advance of the sentence's imposition" (*id.*).  For example, in both *People v Young* (85 AD3d 1489, 1490) and *People v Lee* (80 AD3d 1072, 1073, *lv denied* 16 NY3d 832), the Third Department followed the holding of *Murray* and required preservation where the defendants were informed, at the outset of the sentencing proceeding, that a greater period of PRS would be imposed.  In contrast, the Court of Appeals has not required preservation where a defendant was informed of the period of PRS "only moments before" the court imposed the sentence (*People v McAlpin*, 17 NY3d 936, 938).

In *People v Burroughs* (71 AD3d 1447, 1448, *lv denied* 15 NY3d 802), the court failed to inform the defendant of the PRS component of the sentence at the time of the plea.  The defendant, however, received that information "approximately one month before sentencing" and was granted two adjournments to prepare a postallocution motion (*id.*).  At no time did the defendant move to withdraw his plea on the ground that the court would impose PRS (*see id.*).  Inasmuch as the defendant had notice of the error and an opportunity to be heard on that issue, this Court rejected the defendant's contention that his plea of guilty should be vacated (*see id.*).  In *People v Madison* (71 AD3d 1422, 1422, *lv denied* 15 NY3d 753), the court failed to advise the defendant at the time of the plea that a period of PRS would be imposed.  Several hours later, after the court had recognized the omission, the defendant was brought back to court and informed of the PRS component of the sentence (*see id.*).  Upon questioning by the court, the defendant "indicated that such information did not affect his willingness to adhere to the plea agreement" (*id.* at 1422-1423).  On appeal we rejected the defendant's request to vacate the plea on the ground that he "had the requisite notice that a period of [PRS] would be imposed and an opportunity to withdraw his plea" (*id.* at 1423).  In *Burroughs* and *Madison*, each defendant had sufficient opportunity to preserve any issue with respect to PRS by bringing a postallocution motion to withdraw the plea.

Where the record is not clear that a defendant was informed of the PRS component of the sentence before imposition of the sentence or the record does not establish that the defendant had an opportunity to withdraw the plea, we have followed the decision in *Louree* and vacated the pleas even in the absence of preservation (*see People v Cornell*, 75 AD3d 1157, 1159, *affd* 16 NY3d 801; *People v Colon*, 101 AD3d 1635, 1638).  As we wrote in *Cornell*, "the court ha[s] a constitutional duty to ensure that [a] defendant [is] aware that his [or her] sentence [will] include a period of PRS" (*Cornell*, 75 AD3d at 1159).

We conclude that this case is distinguishable from *McAlpin*, *Cornell* and *Colon.*  In this case the prosecutor informed the court, " '*before* the imposition of sentence' " (*Louree*, 8 NY3d at 546; *see generally* CPL 220.60 [3]), that he could not recall whether PRS had been

discussed at the time of the plea.  The prosecutor noted that they "should probably make a record of that . . . so it is clear."  At that point, the court informed defendant that it "intend[ed] to make a five year period of [PRS]."  Defendant was then asked if she had a chance to talk about that with her attorney, and defendant answered, "[y]es."  Defendant was also asked if she understood that the PRS was a "part of [her] plea" and that she would be on parole supervision for five years at the end of her prison sentence.  Defendant answered, "[c]orrect."  When asked if she "still wish[ed] to go through with sentencing today," defendant again answered, "[y]es."

In our view, the record is clear that "defendant could have sought relief from the sentencing court in advance of the sentence's imposition," and thus "*Louree's* rationale for dispensing with the preservation requirement is not presently applicable" (*Murray*, 15 NY3d at 727; *see Madison*, 71 AD3d at 1422-1423; *Burroughs*, 71 AD3d at 1448; *see also People v Brady*, 59 AD3d 748, 748).  In any event, we conclude that defendant waived her right to assert the *Catu* error inasmuch as "there is ample evidence in the record supporting the . . . conclusion that defendant agreed to the bargain and did so voluntarily with a full appreciation of the consequences" (*People v Seaberg*, 74 NY2d 1, 11; *see generally People v Cox*, 71 AD2d 798, 798).

All concur except SCONIERS and MARTOCHE, JJ., who dissent and vote to reverse the judgment in accordance with the following Memorandum:  We respectfully dissent.  "Because a defendant pleading guilty to a determinate sentence must be aware of the postrelease supervision [PRS] component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the failure of a court to advise of postrelease supervision requires reversal of the conviction" (*People v Catu*, 4 NY3d 242, 245).  Contrary to the conclusion of the majority, we agree with defendant that the plea was not knowingly, voluntarily and intelligently entered and that she was not required to preserve for our review her challenge to the voluntariness of the plea (*see People v Boyd*, 12 NY3d 390, 393; *People v Louree*, 8 NY3d 541, 545-546).  It is undisputed that there was no mention of PRS at the plea proceeding and, based on our review of the record, we conclude that defendant was not "advised of what the sentence would be, including its PRS term, at the outset of the sentencing proceeding" (*People v Murray*, 15 NY3d 725, 727).  Rather, defendant did not learn that PRS would be imposed until "moments before imposi[tion of] the sentence" (*People v McAlpin*, 17 NY3d 936, 938).

Significantly, the brief reference to PRS by the prosecutor at sentencing "cannot substitute for [County Court's] duty to ensure, at the time the plea is entered, that the defendant is aware of the terms of the plea . . . , especially in light of the fact that it was not stated that [PRS] was required to be part of any sentence with a determinate prison term" (*People v Pett*, 77 AD3d 1281, 1282 [internal quotation marks omitted]), and we conclude that the brief reference does not support the People's position that "*Louree's* rationale for dispensing with the preservation requirement is not presently applicable" (*Murray*, 15 NY3d at 727; *see People v Rivera*, 91 AD3d 498, 498).  Moreover, the majority's position, raised sua sponte, that defendant waived her right to assert

the *Catu* error is not supported by the record.  The prosecutor told defendant *incorrectly* just before the court imposed sentence that PRS was "part of [her] plea," and she was offered no option other than to proceed to sentencing.  Defendant indicated that she had discussed PRS with her attorney and understood what the prosecutor had said.  When the prosecutor then asked if she "still wish[ed] to go through with sentencing today," defendant responded in the affirmative.  Despite that exchange, the record fails to demonstrate that defendant was ever informed that there was an alternative to going forward with sentencing, namely, that she was entitled to withdraw her guilty plea because of the court's failure to advise her of PRS at the plea proceeding.  As a result, defendant said nothing during the sentencing proceeding that amounted to a waiver, i.e., "an intentional relinquishment or abandonment of a known right or privilege" (*Johnson v Zerbst*, 304 US 458, 464).  In particular, defendant did not waive her "right to be sentenced in accordance with the plea agreement" (*People v McDermott*, 68 AD3d 1453, 1453).  We therefore vote to reverse the judgment, vacate the plea, and remit the matter to County Court for further proceedings on the indictment.

Entered:  June 14, 2013                        Frances E. Cafarell
                                               Clerk of the Court