Appeal by the defendant from a judgment of the Supreme Court, Queens County (Latella, J.), rendered September 26, 2013, convicting him of robbery in the first degree (two counts), robbery in the second degree (three counts), criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree, criminal possession of stolen property in the fifth degree, failing to stop at a steady red signal, and making an unlawful turn, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Paynter, J.), of those branches of the defendant’s omnibus motion which were to suppress physical evidence and his statements to law enforcement officials. Ordered that the judgment is modified, on the law and the facts, by vacating the convictions of robbery in the first degree (two counts), robbery in the second degree (three counts), criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree, and criminal possession of stolen property in the fifth degree, vacating the sentences imposed thereon, and dismissing those counts of the indictment; as so modified, the judgment is affirmed, and those branches of the defendant’s omnibus motion which were to suppress physical evidence and his statements to law enforcement officials are granted. At a suppression hearing, the People elicited testimony from the arresting officer, the detective who interviewed the defendant at the police station, and the officer who assisted the arresting officer in conducting an inventory search of the defendant’s vehicle. The arresting officer testified that at approximately 3:30 a.m. on the night at issue, a red Mitsubishi traveling at a high rate of speed cut off the unmarked police vehicle that he had been driving, made a left turn from the far right lane of traffic, and then made another left turn through a red light. The officer testified that, as a result, he directed the vehicle, which was driven by the defendant, to stop. The officer also testified that, at the time he stopped the vehicle, he had no suspicion that the vehicle or its occupants were connected in any way to a radio run he had received approximately 20 minutes earlier describing a black man wearing a “blue shirt and blue pants” and carrying a firearm in his waistband who had fled on foot from the area of “70-20 Grand Avenue.” The arresting officer further testified that after the vehicle stopped, he approached the driver’s side, where the defendant was sitting in the driver’s seat, and his partner approached the passenger’s side, where a male passenger was sitting in the front seat. The officer testified that he observed a Coach handbag in the back seat of the vehicle, but he also testified that, at that point, he had no knowledge that the handbag may have been the subject matter of a potential robbery. The arresting officer testified that as he approached the vehicle, he thought the front seat passenger could “possibly fit[ ]” the description from the radio1 run because he was a black male wearing all dark clothing. The officer admitted that the passenger had been wearing grey jeans and a black jacket, not blue pants or a blue shirt, but indicated that in his experience, witnesses easily confuse blue and black. The officer did not immediately ask the passenger to get out of the vehicle; instead, he asked the defendant, who was still seated in the vehicle, if there was “anything illegal” on him or in the vehicle. According to the officer, the defendant replied, “No, officer. You can check.” The officer did not testify that at that time of his inquiry he was in fear for his safety. Although the officer testified that at the time the defendant responded to his inquiry, the officer smelled a strong odor of alcohol coming from the defendant, his question about “anything illegal” was not based on the smell of alcohol or his belief that the passenger looked like the reported gunman, and he never performed a breathalyzer or other sobriety test on the defendant. The officer also testified that neither he nor his partner drew a gun even though he thought the passenger might have matched the description of a man in dark clothing with a gun. The officer testified that he directed the defendant to step out of the vehicle and move to the rear of the vehicle, where he frisked the defendant but did not recover a weapon. The officer and his partner then switched places, and the officer removed the passenger from the vehicle and moved the passenger to the rear of the vehicle. The officer frisked the passenger but did not recover a weapon. The officer testified that he asked the defendant where he was coming from, and the defendant answered that he was coming from a strip club and admitted that he had been drinking. The officer testified that this discussion occurred after the defendant had been removed from the vehicle and after the officer had asked the defendant if there was anything illegal on him or in the vehicle. According to the officer, at the time he entered and looked inside the vehicle, the defendant and the passenger were standing at the rear of the vehicle, and he knew that they were unarmed. The defendant and the passenger were not free to go at that point. The officer testified that although he had no knowledge that the Coach handbag may have been involved in a robbery, the handbag “grabbed [his] attention,” and he had a hunch or suspicion that there might be something wrong with two men driving with a handbag in the backseat. Next to the handbag, he saw a camera and a cell phone. The officer looked inside the handbag to see if there were any markings that would identify the owner and then turned on the camera and saw that all the photographs were of Asian people. The officer testified that he asked the defendant who the camera belonged to, and the defendant replied that it belonged to his girlfriend, who he described, upon further questioning, as “Dominican.” The officer further testified that when he asked the defendant why all the photographs in the camera were of Asian people, the defendant explained that “he [had] bought it off of a crack head in the Rockaways.” According to the officer, he then retrieved the cell phone and dialed the most recent number on the phone. The officer testified that a young woman answered and informed him that the handbag, camera, and cell phone belonged to an Asian exchange student then living in Flushing. The woman reported that she had seen the owner of the property earlier in the evening and that she could not explain how the items came into the defendant’s possession. The officer arrested the defendant and the passenger and called for another police vehicle. According to the arresting officer, when the next police vehicle arrived, the officers used its computer data system to search then-recent police reports, one of which showed that a Coach handbag, a cell phone, and a camera matching the description of the items in the defendant’s vehicle had been stolen earlier that evening. The officer testified that at that point he knew a crime had been committed, and the officers then transported the defendant, the passenger, and the Mitsubishi back to the police station. The arresting officer and an officer who assisted him with an inventory search of the vehicle both testified about the inventory search, and about the handgun that the assisting officer found behind the radio face bracket that held the center console radio, which seemed to be “unclicked.” The detective who interviewed the defendant testified that the defendant initially declined to speak with him when he encountered the defendant at around 5:30 a.m. at the police station. The detective did not advise the defendant of his Miranda rights (see Miranda v Arizona, 384 US 436 [1966]) at this first meeting, and he and his partner returned the defendant to a holding cell after the defendant declined to speak with them. The detective further testified that he had no further contact with the defendant until approximately seven hours later. At that time, the detective again was in the interview room with the defendant and asked him if he would like to speak about the incident. When the defendant asserted that he would, the detective advised the defendant of his Miranda rights by reading a preprinted card to the defendant. The defendant signed a written waiver of his Miranda rights. The defendant spoke to the detective approximately nine hours after he was arrested and made several inculpatory statements regarding where he got the gun, how close he had been to the person he robbed, and what he was planning to do with the camera. The interview lasted approximately one hour but was not videotaped, and the defendant did not sign a statement. Thereafter, the defendant was charged in a 13-count indictment with, inter alia, robbery in the first degree (two counts), robbery in the second degree (three counts), criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree, criminal possession of stolen property in the fifth degree, failing to stop at a steady red signal, and making an unlawful turn. The suppression court denied those branches of the defendant’s omnibus motion which were to suppress the physical evidence found in the backseat of the Mitsubishi, the gun, and the defendant’s statements to the police. The court, crediting the testimony of the arresting officer and the other prosecution witnesses, concluded that the initial traffic stop was justified and that the defendant consented to the search of the vehicle. The court also determined that the inventory search was valid and that, in any event, the police were authorized to search the entire vehicle. Finally, the court concluded that the defendant’s statements at the police station were admissible because they were made after a voluntary waiver of his Miranda rights. After a jury trial, the defendant was convicted of all counts submitted to the jury. The defendant appeals. Contrary to the People’s contentions, the defendant properly preserved the issues raised herein for appellate review (see CPL 470.05 [2]). “At a suppression hearing, the prosecution has the initial burden of going forward with evidence to demonstrate the legality of the police conduct in the first instance” (People v Moses, 32 AD3d 866, 868 [2006]). Accepting the testimony of the arresting officer as true (see People v Condon, 100 AD3d 920, 920 [2012]), we nevertheless find that the branch of the defendant’s omnibus motion which was to suppress the physical evidence should have been granted. The evidence established that the officer did not have a “founded suspicion that criminality [was] afoot” that would justify his question as to whether the defendant had anything illegal in the vehicle (People v Garcia, 20 NY3d 317, 324 [2012]; see People v De Bour, 40 NY2d 210, 215 [1976]). Although the stop was justified by the traffic violations, the intrusiveness of the officer’s conduct exceeded that which is permissible during a normal traffic stop (see People v Woods, 189 AD2d 838, 842 [1993]; People v Mikel, 152 AD2d 603, 605 [1989]). The officer did not testify to any suspicious actions by the defendant, nor did he testify that he felt threatened in any way or offer any other justification for asking the defendant if there was anything illegal in the vehicle or for frisking the defendant (see People v Woods, 189 AD2d at 842; People v Mikel, 152 AD2d at 605). Any subsequently acquired suspicion that the officer formed when he searched the Coach handbag, the cell phone, and the camera did not justify the officer’s question that preceded the search as to whether there was anything illegal in the vehicle (see People v Milaski, 62 NY2d 147, 155-156 [1984]; People v De Bour, 40 NY2d at 215-216). “[A] request for information involves basic, nonthreatening questions regarding, for instance, identity, address or destination. . . . Once [an] officer asks more pointed questions . . . the officer is no longer merely seeking information . . . [and the inquiry] must be supported by a founded suspicion that criminality is afoot” (People v Hollman, 79 NY2d 181, 185 [1992]). Here, the officer’s testimony demonstrated that his question to the defendant as to whether there was anything illegal in the vehicle was based on his observations of the traffic violations and on his speculation that the passenger, not the defendant, possibly matched the description of the man in the radio run. Those facts are insufficient to constitute founded suspicion that criminality was afoot (see People v Garcia, 20 NY3d at 324; People v De Bour, 40 NY2d at 225-226; People v Turriago, 219 AD2d 383, 387-388 [1996], mod 90 NY2d 77 [1997]; People v Woods, 189 AD2d at 842). As the officer’s question was not supported by the requisite founded suspicion that criminality was afoot, the fruit of that unlawful inquiry must be suppressed (see People v Milaski, 62 NY2d at 155-156; People v De Bour, 40 NY2d at 217). Thus, the Coach handbag, the cell phone, and the camera should have been suppressed as fruit of an illegal search, as well as the gun that was subsequently found upon an inventory of the vehicle (see People v Garcia, 20 NY3d at 324; People v Rossi, 80 NY2d 952, 954 [1992]; People v Smith, 98 AD3d 590, 592-593 [2012]; People v Woods, 189 AD2d at 842; see also People v Turriago, 219 AD2d at 391). Contrary to the People’s contention, the suppression record did not demonstrate that the causal connection between the illegal search and the defendant’s statements was sufficiently attenuated to purge the taint of the illegal search (see People v Harris, 77 NY2d 434, 441 [1991]; People v Woods, 189 AD2d at 842; see also People v Bradford, 15 NY3d 329, 333 [2010]; People v Conyers, 68 NY2d 982, 983 [1986]; People v Rogers, 52 NY2d 527 [1981]). Accordingly, the physical evidence, as well as the statements that the defendant made to law enforcement officials, must be suppressed (see Taylor v Alabama, 457 US 687, 694 [1982]; Wong Sun v United States, 371 US 471, 485 [1963]; People v Harris, 77 NY2d at 441). Without the statements and physical evidence that should have been suppressed, there could not be sufficient evidence to prove the defendant’s guilt of the robbery or the related charges. Thus, all counts of the indictment other than those for traffic violations must be dismissed (see People v Rossi, 80 NY2d at 954; People v Smith, 98 AD3d at 592-593; People v Woods, 189 AD2d at 842; see also Wong Sun v United States, 371 US at 485). In light of our determination, we need not reach the defendant’s remaining contention. Hall, J.P., Sgroi and Duffy, JJ., concur.