■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONG HE, Appellant. [68 NYS3d 130]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (J. Goldberg, J.), rendered October 7, 2013, convicting him of assault in the second degree (two counts) and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statement to law enforcement officials.

Ordered that the judgment is affirmed.

Shortly after midnight on February 15, 2011, the defendant approached a man named Tong Zhang on the dance floor of a Brooklyn nightclub and stabbed him in the neck with a sharp object. When a second man, Chun Zhang, attempted to prevent the defendant from fleeing, the defendant slashed Chun Zhang in the face and stabbed him in the chest and arm. The defendant was apprehended six months later, after Chun Zhang recognized him on a street in Brooklyn, followed him to the apartment building where he lived, and called 911. About 4½ hours after his arrest, the defendant gave the police a statement in which he admitted that he had slashed one victim in the neck and another victim in the face, but claimed that he was acting in self-defense.

Prior to trial, the defendant moved, inter alia, to suppress his statement to the police. According to the testimony presented at the ensuing suppression hearing, at about 8:15 on the evening of August 15, 2011, Detective John Papio and his partner responded to a call advising them that a witness had seen the perpetrator of the nightclub incident walk into a building on 52nd Street in Brooklyn. After initially gathering at a nearby street corner, Detective Papio, his partner, another detective, and several uniformed officers proceeded to the 52nd Street building. Detective Papio described the building as a three-story attached residential building, with at least one apartment on each floor. When Detective Papio arrived at the premises behind other police personnel, he entered a "shared area" of the building through an open door, and began to walk

upstairs. From the second floor landing, he was able to see the defendant and the defendant's wife standing outside the door to their third-floor apartment. A detective who was acting as an interpreter walked the defendant over to Detective Papio, who walked the defendant out to the street. At about 8:30 p.m., one of the victims of the nightclub incident was driven to the scene, and identified the defendant as the perpetrator. The defendant was then handcuffed and transported to the 68th Precinct station house.

Detective James Hemmer, who had been assigned to investigate the nightclub incident on the day it occurred, was called in to process the defendant's arrest between 8:30 and 9:00 p.m. When Detective Hemmer arrived at the station house at about 9:00 p.m., the defendant was in a holding cell. At about 9:30 p.m., Detective Hemmer interviewed the victim Chun Zhang, who told him that he had spotted the man who stabbed him leaving a store in Brooklyn. Chun Zhang followed the man, saw him enter the building on 52nd Street, called 911, and then directed the police to the building. A short time later, when the man was brought out of the building by the police, Chun Zhang identified him as the person who had stabbed him inside the nightclub.

At about 10:00 p.m., Detective Hemmer went to see the defendant, and asked him if he spoke English. The defendant responded by shaking his head "no." Three hours later, at about 1:00 a.m., Detective Hemmer spoke to the defendant inside a second-floor interview room with the assistance of Police Officer Victor Ko, who acted as a translator. At Detective Hemmer's instructions, Officer Ko read the defendant *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]), translating them from a *Miranda* rights sheet. The defendant initialed each right listed on the sheet, and signed on the bottom. After administering the warnings, Officer Ko asked the defendant if he knew why he was at the precinct, and the defendant replied, "yes, I know it in my heart." The defendant then gave a statement in which he claimed that Tong Zhang and his friends attacked him at the nightclub, and that he swung a sharp metal object at them in self-defense, slashing one victim in the neck and another in the face.

At the conclusion of the hearing, the Supreme Court found that the defendant had been arrested in the hallway in front of his apartment door, and that the hallway was part of his home because he had a reasonable expectation of privacy in that area. Accordingly, the court determined that the police violated *Payton v New York* (445 US 573 [1980]) by arresting the de-

fendant in the hallway without a warrant. However, the court concluded that suppression of the defendant's statement was not required because the statement was attenuated from his illegal arrest.

After a jury trial, the defendant was convicted of two counts of assault in the second degree, and criminal possession of a weapon in the fourth degree. On appeal he contends, inter alia, that his statement to the police should have been suppressed because it was not sufficiently attenuated from his illegal arrest to be purged of the taint created by the illegality. The People respond that the defendant was not illegally arrested in violation of *Payton* because the hallway outside of his apartment was not part of his home, and, in any event, the defendant's statement was sufficiently attenuated to purge any taint.

Initially, we note that CPL 470.15 (1) bars this Court from affirming a judgment, sentence, or order on a ground not decided adversely to the appellant by the trial court (*see People v Concepcion*, 17 NY3d 192, 195 [2011]; *People v LaFontaine*, 92 NY2d 470, 473-474 [1998]). This provision has been construed as "a legislative restriction on the Appellate Division's power to review issues either decided in an appellant's favor, or not ruled upon, by the trial court" (*People v LaFontaine*, 92 NY2d at 474; *see People v Ingram*, 18 NY3d 948, 949 [2012]). Since the Supreme Court ruled in favor of the defendant on the issue of whether he was illegally arrested in violation of *Payton*, we may not review that issue on the defendant's appeal (*see People v Ingram*, 18 NY3d at 949; *People v Concepcion*, 17 NY3d at 195-196; *People v LaFontaine*, 92 NY2d at 473-474).

The Fourth Amendment bars a warrantless arrest in a suspect's home, absent exigent circumstances or consent (*see Payton v New York*, 445 US 573 [1980]; *People v Mateo*, 148 AD3d 727, 728-729 [2017]). Under the New York State Constitution, "statements obtained from an accused following a *Payton* violation must be suppressed unless the taint resulting from the violation has been attenuated" (*People v Harris*, 77 NY2d 434, 437 [1991]; *see People v Jones*, 2 NY3d 235, 240 [2004]; *People v Mateo*, 148 AD3d at 729). The attenuation doctrine requires a court to consider "the temporal proximity of the arrest and the confession, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct" (*People v Conyers*, 68 NY2d 982, 983 [1986]; *see People v Bradford*, 15 NY3d 329, 333 [2010]). "The postarrest administration of *Miranda* warnings by the police is an important but not a conclusive factor in determining whether

the confession was obtained by exploitation of the illegal arrest" (*People v Conyers*, 68 NY2d at 983, citing *Brown v Illinois*, 422 US 590, 603 [1975]; *see People v Bradford*, 15 NY3d at 334). "[T]he relevant factors will vary from case to case and each case must be individually considered on the particular facts and circumstances presented" (*People v Borges*, 69 NY2d 1031, 1033 [1987]).

Here, the Supreme Court's determination that the defendant's statement was attenuated from his illegal arrest is supported by the record. The defendant was not interviewed by the police until approximately 4½ hours after his arrest, and no questioning occurred until after Officer Ko read the defendant *Miranda* warnings, and the defendant initialed and signed the *Miranda* sheet (*see People v Bradford*, 15 NY3d at 333-334; *People v Conyers*, 68 NY2d at 983; *People v Mateo*, 148 AD3d at 729; *People v Buchanan*, 136 AD3d 1293, 1294 [2016]; *People v Fashaw*, 134 AD3d 490, 491 [2015]; *People v Strong*, 17 AD3d 1121 [2005]; *People v Cooke*, 299 AD2d 419, 420 [2002]). The interview was conducted in a different location than the arrest, and by police personnel who were not involved in the arrest. Moreover, prior to interviewing the defendant, Detective Hemmer spoke to one of the victims, Chun Zhang, and learned that Chun Zhang had recognized the defendant leaving a store, followed him to the 52nd Street building, called 911, and identified the defendant as the individual who had stabbed him (*see People v Mateo*, 148 AD3d at 729; *People v Buchanan*, 136 AD3d at 1294; *cf. People v Newson*, 155 AD3d 768 [2d Dept 2017]). In addition, although the court ultimately made a finding that the police violated *Payton* by arresting the defendant in an area that constituted part of his home without a warrant, the record supports the court's finding that there was no flagrant misconduct (*see People v Fanshaw*, 134 AD3d 490, 491 [2015]). There is no indication that the conduct of the arresting officers was motivated by bad faith or a nefarious police purpose (*see People v Bradford*, 15 NY3d at 334; *People v Mateo*, 148 AD3d at 729; *People v Buchanan*, 136 AD3d 1293 [2016]; *People v Padilla*, 28 AD3d 236, 237 [2006]). Accordingly, the court properly denied that branch of the defendant's omnibus motion which was to suppress his statement to law enforcement officials.

Contrary to the defendant's further contention, the People did not commit a *Brady* violation (*see Brady v Maryland*, 373 US 83 [1963]) by failing to disclose the contact information of potential witnesses (*see People v Pacheco*, 38 AD3d 686, 688 [2007]; *People v Estrada*, 1 AD3d 928, 929 [2003]). Eng, P.J., Roman and Hinds-Radix, JJ., concur.

Hall, J., dissents, and votes to reverse the judgment, on the law and the facts, vacate the determination denying that branch of the defendant's omnibus motion which was to suppress his statement to law enforcement officials, and remit the matter to the Supreme Court, Kings County, for further proceedings in accordance with *People v LaFontaine* (92 NY2d 470, 474-475 [1998]), with the following memorandum: I agree with my colleagues in the majority that the People did not commit a *Brady* violation (*see Brady v Maryland*, 373 US 83 [1963]) by failing to disclose the contact information of potential witnesses. I also agree with my colleagues that we are precluded from reviewing the issue of whether the defendant was illegally arrested, as the Supreme Court decided this issue in favor of the defendant, who is the appellant in this case. Contrary to the conclusion of my colleagues, however, I believe that the court erred in determining that the causal connection between the illegal arrest and the defendant's statement was sufficiently attenuated so as to purge the taint of the illegal arrest.

Cases that have found sufficient attenuation between an unlawful arrest and a custodial statement have generally involved an intervening event, which could be deemed the precipitating cause of the statement, other than: (1) the passage of several hours; (2) the fact that the statement was elicited by a detective who was not one of the arresting officers; and (3) the fact that *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]) were given.

For example, in *People v Bradford* (15 NY3d 329, 334 [2010]), the subject confession was made after the defendant was confronted with statements of the victim and the victim's sister, which statements had been obtained independent of the defendant's detention. And in *People v Rogers* (52 NY2d 527, 533 [1981]), the challenged statements were made after the defendant was confronted with lawfully obtained physical evidence and after the defendant had a conversation with his brother, who was a police officer. Here, there was no such intervening event. The facts that Chun Zhang had recognized the defendant on the street as the perpetrator, followed him to the 52nd Street building, and called 911 were all known to the police prior to the arrest, and in fact, were the basis for the arrest. I further submit that the showup identification that occurred immediately after the arrest cannot be deemed an intervening event because the showup identification, which was conceded by the People to have been suggestive, flowed directly from the arrest. Under the circumstances, the fact of the showup

identification does not "justif[y] the conclusion that [the subsequent statement] was not the product of the illegal" arrest (*id.* at 533).

Without such an intervening event, courts have generally found insufficient attenuation to purge the taint of an illegal arrest (*see Taylor v Alabama*, 457 US 687, 691-692 [1982] [finding insufficient attenuation between an illegal arrest and a confession even though: (1) six hours had passed between the arrest and the confession; (2) the defendant had been given *Miranda* warnings three times; and (3) the defendant was visited by his girlfriend and a male companion immediately before making the confession]; *People v Harris*, 77 NY2d 434, 441 [1991]; *People v Newson*, 155 AD3d 768 [2d Dept 2017] [finding insufficient attenuation notwithstanding: (1) the passage of approximately nine hours between the arrest and the challenged statements; (2) the fact that the detective who elicited the challenged statements was not one of the arresting officers; and (3) the fact that *Miranda* warnings were given before the statements were made]; *People v Gundersen*, 255 AD2d 454, 454-455 [1998] [finding insufficient attenuation between an illegal arrest and a statement where there were no significant intervening events despite the passage of several hours between the arrest and the statement and despite the fact that *Miranda* warnings had been issued]).

Finally, contrary to the determination of my colleagues in the majority, I believe that the police misconduct identified by the Supreme Court was flagrant. The court's finding that the arrest was illegal was not based solely on the court's conclusion that the arrest was made in the defendant's home in violation of *Payton v New York* (445 US 573 [1980]). The finding was also based on its conclusion that, at the time of the arrest, the police lacked probable cause to believe that the defendant had committed a crime (*see* CPL 140.10; *People v De Bour*, 40 NY2d 210, 223 [1976]).

For the foregoing reasons, I vote to reverse the judgment appealed from and vacate the determination denying that branch of the defendant's omnibus motion which was to suppress his statement to law enforcement officials. In order to give the People an opportunity to seek reexamination of the issue of whether the arrest was unlawful, an issue that we cannot reach on this appeal, I further vote to remit the matter to the Supreme Court, Kings County, for further proceedings in accordance with *People v LaFontaine* (92 NY2d 470, 474-475 [1998]).