People v Libreros (2025 NY Slip Op 50595(U))

[*1]

People v Libreros

2025 NY Slip Op 50595(U)

Decided on April 22, 2025

Criminal Court Of The City Of New York, Queens County

Licitra, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 22, 2025
Criminal Court of the City of New York, Queens County

The People of the State of New York

against
Libreros, Defendant.

Docket No. CR-026914-23QN

For the People: Melinda Katz, District Attorney of Queens County (by Johanna Dashman)
For Mr. Libreros: Marc Laykind, Esq.

Wanda L. Licitra, J.

On April 1, 2025, this court held a combined Mapp/Huntley/Dunaway hearing. The following constitutes the court's findings of fact and conclusions of law.
FINDINGS OF FACT
At the hearing, the prosecution called one witness, David Marconi.
David Marconi is an NYPD detective assigned to the Animal Cruelty Investigation Squad. He has worked that assignment for about five months. Before that, he was assigned to the NYPD's Queens South Community Response Team. Before that, he was part of the NYPD's Narcotics Borough Brooklyn South. All in, Detective Marconi has worked as a police officer for about nineteen years, and he has been involved in thousands of arrests. He was trained to be a police officer at the NYPD's six-month Police Academy.
On September 13, 2023, Detective Marconi was working a shift with his partner, Officer Guevara, in Queens County. They were assigned to the Queens South Community Response Team, which the detective described as tasked with looking for "[a]nything, any violations, any misdemeanors, any felonies." Both officers were in uniform and in an unmarked police vehicle. 
Some time that night, the officers were driving southbound on Brookville Boulevard. They noticed a white minivan driving northbound and saw it cross over two solid yellow lines. The minivan was approximately two or three car lengths ahead of the officers. Upon seeing this traffic infraction, Detective Marconi made a U-turn and activated his lights and sirens. The minivan pulled over to the corner of 135th Avenue and Brookville Boulevard with its windows down.
The officers approached the minivan, Detective Marconi on the driver's side and Officer Guevara on the passenger's side. Detective Marconi said to the driver, "You know you can't be driving like that," and the driver responded, "I know, I'm sorry. I was fighting with my girlfriend." Detective Marconi asked for the driver's license and returned to his unmarked police vehicle.
Back in his unmarked vehicle, Detective Marconi "ran" the driver's name and license in the NYPD's Domain Awareness System ("DAS"). He learned that the driver was Mr. Libreros, [*2]and that Mr. Libreros was "on probation or parole." Detective Marconi testified that he is "not sure which one it was," and his demeanor when testifying to this statement also indicated that he was unsure. While looking at the DAS report, Detective Marconi also saw that Mr. Libreros had prior narcotics-related convictions.
Detective Marconi returned to the minivan and asked Mr. Libreros if he had "anything I need to know about." Mr. Libreros responded, "No, I have nothing. You can search the car." Detective Marconi asked Mr. Libreros to get out of the vehicle, which he did. "Again," Detective Marconi testified, "I asked him numerous times, can I search the car?" In response, Mr. Libreros said, "Yes, I got nothing to hide. I gave you consent."
The officers brought Mr. Libreros behind his minivan. Detective Marconi asked him, "Do you have anything your person?" Mr. Libreros put his hands up and said, "I have nothing to hide." Detective Marconi asked, "Do you give me consent?" Mr. Libreros said, "Consent."
Detective Marconi searched Mr. Libreros and found narcotics in his left jeans pocket.
He arrested Mr. Libreros for criminal possession of a controlled substance.

CONCLUSIONS OF LAW

At a Huntley suppression hearing, the prosecution must prove beyond a reasonable doubt that an accused person's statements to police were voluntary. (See People v. Huntley, 15 NY2d 72 [1965]). This burden includes proving that the statements do not fail either the Miranda or traditional due-process voluntariness doctrines. (See generally People v. Frank, 81 Misc 3d 1212[A], at *3-*5 [Crim. Ct., Queens County 2023]).
Here, the prosecution meets their burden. Mr. Libreros's statements did not violate Miranda, as statements made during an "ordinary" traffic stop do not involve the type of "custody" contemplated by Miranda. (E.g., Berkemer v. McCarty, 468 U.S. 420, 440 [1984]). Nor did these statements implicate traditional voluntariness concerns, as there is no evidence of coercion, undue pressure, threats, or promises. (See, e.g., Frank, 81 Misc 3d 1212[A], at *4).
The Huntley motion is therefore denied.
At a Mapp/Dunaway suppression hearing, "the prosecution has the initial burden of going forward with evidence to demonstrate the legality of the police conduct in the first instance." (People v. Newson, 155 AD3d 768, 772 [2d Dep't 2017]).
Here, the prosecution establishes that the police lawfully stopped Mr. Libreros's minivan. An automobile stop is lawful if it is based on "probable cause that a driver has committed a traffic infraction." (People v. Hinshaw, 35 NY3d 427, 430 [2020] [internal quotation marks omitted]). It is a traffic infraction to cross over solid, double yellow lines while driving. (See V.T.L. § 1110[a]; see also People v. Derevyanchenko, 78 Misc 3d 42 [App. Term, 2d Dep't 2023]).
However, the prosecution fails to establish that the police acted lawfully during the car stop. In People v. De Bour, 40 NY2d 210 [1976], the Court of Appeals promulgated a four-level framework to assess the reasonableness of police conduct towards private persons in New York. (See generally People v. Garcia, 20 NY3d 317 [2012]). Each escalating level of police intrusion requires an "escalating measure[] of suspicion." (Id. at 322). The De Bour framework applies to car stops. (Id.).
Relevant here, at the initial De Bour level, police may approach a person and make a "request for information" when "there is some objective credible reason for that interference not [*3]necessarily indicative of criminality." (Id. [internal quotation marks omitted]). These questions must be "basic" and "nonthreatening," like those asking for "identity, address or destination." (Id. [internal quotation marks omitted]). However, once the officer asks "more pointed questions" that would lead the person to reasonably believe they are "suspected of some wrongdoing," then the officer has escalated the encounter. (Id. [internal quotation marks omitted]). Such escalated questioning is only justifiable when an officer possesses "founded suspicion that criminal activity is afoot." (Id. [internal quotation marks omitted]).
A police officer who asks a person whether they possess something they "need to know about" during a car stop has escalated their questioning beyond the initial De Bour level. (People v. Stover, 181 AD3d 1061, 1063 n.3 [3d Dep't 2020] [noting that an officer's question whether a person "had anything in the car, anything like that we need to know about" was a "pointed, accusatory question" that exceeds the initial De Bour level]; see also People v. White, 159 AD3d 741 [2d Dep't 2018] [asking "What do you have?" exceeded the initial De Bour level]; Newson, 155 AD3d 768 [2d Dep't 2017] [asking whether someone had "anything illegal" on him or in a vehicle exceeded the initial De Bour level]; People v. Jordan, 9 AD3d 972 [3d Dep't 2004] [asking if a person "had anything on him that he shouldn't have" was a "pointed, accusatory question[]" exceeding the initial De Bour level]).
Here, the prosecution's evidence fails to establish that the officer had a "'founded suspicion that criminality was afoot'" justifying his pointed question. (See Newson, 155 AD3d at 772 [quoting Garcia, 20 NY3d at 324]). Before asking this question, Detective Marconi knew three things: (1) that Mr. Libreros had committed a traffic infraction; (2) that Mr. Libreros was "on probation or parole"; and (3) that Mr. Libreros had prior narcotics-related convictions.
None of these observations provided founded suspicion that criminal activity was afoot. A simple traffic infraction does not itself give rise to such suspicion of criminality, (see, e.g., Garcia, 20 NY3d 317), nor does committing a simple traffic infraction while "on probation or parole,"[FN1]
or when one has prior convictions. Contrast the situation here to cases where courts recognized a founded suspicion of criminality. (See, e.g., People v. Banks, 148 AD3d 1359, 1362 [3d Dep't 2017] ["The prolonged diet of inconsistencies and lies provided by defendant about his travels, when coupled with his parole situation and his nervous demeanor" provided "founded suspicion of criminality"]; People v. Kelly, 37 AD3d 866, 866-68 [3d Dep't 2017] [founded suspicion where a person on parole who committed a traffic infraction "matched the description" of a person "suspected of involvement" in unsolved burglaries, and he provided a description of a "friend" which "matched" the description of the burglary accomplice]; People v. Simmons, 79 [*4]AD3d 431, 431-32 [1st Dep't 2010] ["When defendant admitted he knew he was not allowed to be in the subway [as a condition of parole], and gave a meritless and suspicious excuse for being there, these factors, taken together with their knowledge of defendant's criminal history, gave the police a founded suspicion that defendant was in the subway to commit a crime."]). In this case, there are no such aggravating factors: no suspicious, conflicting statements; no observations of his person or vehicle indicative of criminality; nothing suggesting he was violating any conditions of supervision; no indication that he was involved in unsolved crimes. Indeed, the prosecution here made no claim to the contrary. In their argument, they provided no reason whatsoever as to why Detective Marconi could justifiably ask Mr. Libreros if he had "anything I need to know about." (See Tr. at 45-48).
Therefore, "[a]lthough the stop was justified by the traffic violation[], the intrusiveness of the officer's conduct exceeded that which is permissible during a normal traffic stop." (Newson, 155 AD3d at 772).
In sum, the Mapp/Dunaway motion to suppress is granted, and the Huntley motion is denied. The narcotics, and any observations of the narcotics, are suppressed.
The foregoing constitutes the order and decision of the court.
Dated: April 22, 2025
Queens, NY
Wanda L. Licitra, J.C.C.

Footnotes

Footnote 1:Notably, the prosecution's record here is unclear as to whether the detective believed Mr. Libreros to be on probation or on parole, each of which is meaningfully different. "[P]arolees are on the 'continuum' of state-imposed punishments," and "parolees" may have "fewer expectations of privacy than probationers." (E.g., Samson v. California, 547 U.S. 843, 850 [2006] [making the point regarding federal constitutional law]; see also People v. Suttell, 109 AD2d 249, 250-51 [4th Dep't 1985] [noting that under New York law, "the status of a probationer" is "distinguished from that of a parolee," and that the privacy rights of each should be analyzed differently]; see generally People v. Huntley, 43 NY2d 175 [1977]). In any event, the prosecution did not hinge any of their arguments on the fact that Detective Marconi believed Mr. Libreros to be on probation or parole.